JUDGE BAER

13 CIV 1995

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

SHAWN SCHRADER,                                    )
                                                   )
                          Plaintiff,               )        **COMPLAINT**
                                                   )
        -against-                                  )        **JURY TRIAL DEMANDED**
                                                   )
THE CITY OF NEW YORK; POLICE OFFICER               )
A. JONES; POLICE OFFICER DANTE PEREZ,              )
Shield No. 14970; POLICE OFFICER EDDY              )
CALDERON, Shield No. 31512; POLICE                 )
OFFICER DANTE PEREZ, Shield No. 14970;             )
DETECTIVE CHRISTOPHER MCDONNELL,                   )
Shield No. 7369 and SERGEANT SALVATORE             )
PULIZZOTTO, Shield No. 4906; JOHN DOES;            )
and RICHARD ROES,                                  )
                                                   )
                          Defendants.              )
--------------------------------------------------------------X



## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiff SHAWN SCHRADER seeks relief

for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C.

Section 1983, by the United States Constitution, including its First, Fourth and Fourteenth

Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks

damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and

attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

3.      The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiff filed a Notice of Claim with the Comptroller of the City of New York on March 23, 2012 concerning the December 31, 2011 and March 17, 2012 incidents. Plaintiff also filed a Notice of Claim with the Comptroller of the City of New York on July 13, 2012 concerning the May 1, 2012 incident. More than 30 days have elapsed since service of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

2

7.     Plaintiff SHAWN SCHRADER was at all times relevant herein a resident of the State of New York.

8.     Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

9.     Defendants POLICE OFFICER A. JONES; POLICE OFFICER DANTE PEREZ, Shield No. 14970; POLICE OFFICER EDDY CALDERON, Shield No. 31512; POLICE OFFICER DANTE PEREZ, Shield No. 14970; DETECTIVE CHRISTOPHER MCDONNELL, Shield No. 7369; SERGEANT SALVATORE PULIZZOTTO, Shield No. 4906; and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POLICE OFFICER A. JONES; POLICE

3

OFFICER DANTE PEREZ, Shield No. 14970; POLICE OFFICER EDDY CALDERON, Shield No. 31512; POLICE OFFICER DANTE PEREZ, Shield No. 14970; DETECTIVE CHRISTOPHER MCDONNELL, Shield No. 7369; SERGEANT SALVATORE PULIZZOTTO, Shield No. 4906; and JOHN DOES, are sued individually and in their official capacity.

10. Defendants DETECTIVE CHRISTOPHER MCDONNELL, Shield No. 7369; SERGEANT SALVATORE PULIZZOTTO, Shield No. 4906; and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command. Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. DETECTIVE CHRISTOPHER MCDONNELL, Shield No. 7369; SERGEANT SALVATORE PULIZZOTTO, Shield No. 4906; and RICHARD ROES are sued individually and in their official capacity.

## STATEMENT OF FACTS

### The December 31, 2011 Incident

11. On December 31, 2011, approximately 10:40 p.m., Plaintiff was riding his bicycle northbound along Centre Street, in the vicinity of 100 Centre Street, in Manhattan.

12.     There were demonstrators walking northbound along the sidewalk of Centre Street, as part of a new year's demonstration associated with the Occupy Wall Street movement.

13.     Plaintiff was riding his bicycle with the flow of traffic.

14.     Plaintiff was not violating any traffic laws.

15.     Without warning, and with no lawful justification, Plaintiff was roughly pulled off of his bicycle by a JOHN DOE member of the New York City Police Department (NYPD) and arrested, without cause or justification.

16.     A number of JOHN DOES members of the NYPD roughly pushed Plaintiff up against a van, and handcuffed Plaintiff.

17.     Plaintiff was then brought to the 5th Precinct where he was searched, and had his property removed from him.

18.     After a few hours in custody, Plaintiff was released with a summons for disorderly conduct.

19.     The summons accused claimant, falsely, of "riding his bicycle against traffic blocking cars from going down the street."

20.     The signatory on the summons, who falsely affirmed under penalty of perjury to have personally observed this, is Defendant POLICE OFFICER A. JONES.

21.     The summons was returnable on March 14, 2012.

22.     Plaintiff forgot to appear in court on the March 14, 2012 court date.

23.     The summons was dismissed in its entirety on March 19, 2012, when Plaintiff was taken to a courtroom following his arrest during the March 17, 2012 incident.

5

The March 17, 2012 Incident

24.     On March 17, 2012, approximately 11:00 p.m., Plaintiff was present in Zuccotti

Park (located at Broadway and Liberty Streets), New York, NY.

25.     Plaintiff was casually enjoying the park.

26.     Zuccotti Park was during that time period a hub of activity for the Occupy Wall

Street movement, but on the night in question there was no specific demonstration going on.

27.     Around 11:00 p.m. a large number of police officers began amassing around the

park.

28.     Plaintiff was prevented from leaving the park by a line of police officers.

29.     Plaintiff joined a group of people in the center of the park.

30.     Numerous police officers moved into the park, violently pushing, grabbing, and

arresting people, without cause or justification.

31.     At the time the officers moved into the park, Plaintiff was unable to hear any

announcements from the police.

32.     Plaintiff has since that time viewed videos on the internet on which the police can

be heard making announcements that the park was closed and that people had to leave the park.

33.     The police surrounded the group of people, including Plaintiff, who were in the

center of the park.

34.     The police grabbed Plaintiff and manhandled him and others.

35.     Defendant POLICE OFFICER EDDY CALDERON grabbed Plaintiff's left thumb

and pulled it back until it broke, causing Plaintiff great pain.

36.     When Plaintiff screamed in pain, Defendant CALDERON then bent Plaintiff's hand

6

back even further, causing Plaintiff further great pain and injury.

37.    Plaintiff was then handcuffed with plastic "flexcuffs."

38.    While Plaintiff was handcuffed on the ground, a JOHN DOE officer stepped on Plaintiff's face and applied pressure to Plaintiff's face with his boot, without cause or justification.

39.    That same JOHN DOE officer also stomped twice on Plaintiff's face with his boot, without cause or justification.

40.    Police officers picked Plaintiff up and carried him out of the park.

41.    Another JOHN DOE officer picked Plaintiff up and roughly slammed him to the ground, without cause or justification.

42.    After approximately half an hour, Plaintiff and other arrestees were placed by the police onto a commandeered MTA bus that was being used by the police for transporting the arrestees.

43.    Plaintiff was violently thrown into the bus by a JOHN DOE police officer.

44.    The police were being exceedingly brutal to the other arrestees as well.

45.    One of the other arrestees was knocked to the floor of the bus, and had a police officer stomp on his neck.

46.    Plaintiff and the other arrestees were then transported to the NYPD Midtown South Precinct, where they were held on the bus in front of the precinct for approximately two hours.

47.    Plaintiff made repeated complaints of pain, and made numerous requests for medical care, all of which were ignored by JOHN DOES officers.

48.    In addition to the pain to his thumb, Plaintiff at that time had blood dripping out of

his right ear, and pain to his head, from the police brutality he had been subjected to.

49.   Plaintiff was not provided with medical care until approximately twelve hours later.

50.   After the approximately two hour wait in the bus in front of the Precinct, Plaintiff was brought into the precinct and placed in a cell, at which point the plastic "flexcuffs" were finally removed.

51.   Plaintiff, particularly concerned regarding the blood coming from his right ear, continued to ask for medical care, and asked to make a phone call for legal assistance.

52.   Plaintiff's requests were ignored until the next morning, when he was brought, handcuffed, in police custody by ambulance to Bellevue Hospital.

53.   Plaintiff's requests for food and water were also ignored while he was in police custody.

54.   At the Bellevue Hospital emergency room, Plaintiff was only seen by nurses, and not by a doctor, and had the blood cleaned from his ear, and an x-ray taken of his left hand.

55.   Plaintiff was given a splint for his left hand.

56.   Plaintiff had nodded off at Bellevue Hospital, and was awoken by Defendant POLICE OFFICER DANTE PEREZ, who was now assigned to him.

57.   Defendant PEREZ was impatient with Plaintiff, and uncuffed Plaintiff from the stretcher he had been cuffed to, and brought Plaintiff to a police van outside.

58.   At one point Defendant PEREZ's partner stepped away briefly, and Defendant PEREZ asked Plaintiff, in sum and substance, "are you Occupy Wall Street people going to come back and demonstrate?"

8

59.   Plaintiff was silent, and did not respond to Defendant PEREZ.

60.   Defendant PEREZ became very aggravated at Plaintiff's silence, and stated, in sum and substance, "are you punks going to come back and keep showing up?"

61.   Plaintiff continued to remain silent, and did not respond to Defendant PEREZ.

62.   Defendant PEREZ stated, in sum and substance, "Because every time you guys come back we're going to kick your asses," at which point Defendant PEREZ attacked Plaintiff, without cause or justification.

63.   Defendant PEREZ pushed Plaintiff, who was handcuffed, into the open door of the police van, and grabbed Plaintiff's throat and choked Plaintiff, and applied pressure with his thumb to Plaintiff's ear, which caused Plaintiff's ear to begin to bleed again.

64.   Plaintiff remained silent, and said nothing, and got into a seat in the van.

65.   Defendant PEREZ and his partner took Plaintiff back to the Precinct, and placed him in a cell.

66.   Defendant PEREZ later unwrapped and removed Plaintiff's splint, and threw it in the garbage, without cause or justification.

67.   At one point in the precinct, angry that Plaintiff had taken a bite of a sandwich that a female arrestee had given to him, Defendant PEREZ said to Plaintiff, in sum and substance, "I told you not to fuck with me," and grabbed Plaintiff's injured hand and raised it over Plaintiff's head to inflict pain on Plaintiff.

68.   Plaintiff, still in pain and bleeding from his ear, requested to go back to the hospital.

69.   Plaintiff was not brought back to the Bellevue hospital until he was first taken to

9

Manhattan Central Booking.

70.     At Bellevue Hospital plaintiff's ear was cleaned again, and he was provided with aspirin.

71.     Plaintiff was then taken back to Manhattan Central Booking.

72.     The corrections / police staff at Manhattan Central Booking did not know where Plaintiff's medical paperwork was, and so Plaintiff was brought back to Bellevue Hospital a third time to get paperwork from the hospital.

73.     Plaintiff was then taken back, again, to Manhattan Central Booking.

74.     Plaintiff was not taken before a judge until the afternoon of March 19, 2012, after approximately 40 hours in custody.

75.     Claimant was released from custody without any charges stemming from his March 17, 2012 arrest, as the District Attorney's office declined to prosecute Plaintiff for any of the numerous charges the police department had forwarded to them on Plaintiff's arrest paperwork (i.e., Obstruction of Governmental Administration in the Second Degree, Resisting Arrest, Trespass, and Disorderly Conduct).

76.     The disorderly conduct summons that Plaintiff had received on December 31, 2011 was dismissed in its entirety during the March 19, 2012 court appearance.

<u>The May 1, 2012 Incident</u>

77.     On May 1, 2012, at approximately 9:15 p.m., Claimant was present on the sidewalk in the vicinity of 26 Broadway, New York, NY, where a demonstration had earlier been going on.

78.     May 1 was "May Day," and there were a number of Occupy Wall Street-related

10

activities going on around Manhattan.

79.    Plaintiff's birth name is Shawn Schrader.

80.    For his communications concerning his participation in the Occupy Wall Street movement, Plaintiff has used his mother's maiden name, Carrié, as his last name.

81.    Plaintiff was a visible presence as part of his participation in the Occupy Wall Street movement.

82.    Plaintiff was approached by a number of JOHN DOES members of the NYPD, including, on information and belief, Defendants DETECTIVE CHRISTOPHER MCDONNELL and SERGEANT SALVATORE PULIZZOTTO.

83.    One of them, a plainclothes JOHN DOE officer, said "Shawn," and seized Plaintiff, and told Plaintiff to put his hands behind his back.

84.    The plainclothes JOHN DOE officer called someone over to handcuff Plaintiff, and several officers went through Plaintiff's pockets.

85.    Plaintiff's belongings were placed in a bag and taken away, on information and belief by Defendant SERGEANT PULIZZOTTO.

86.    Plaintiff was placed into dark red unmarked police transport van, and taken to One Police Plaza.

87.    At One Police Plaza, some of Plaintiff's belongings were vouchered by Defendants DETECTIVE MCDONNELL and SERGEANT PULIZZOTTO, but some were not.

88.    Plaintiff was photographed at One Police Plaza.

89.    At One Police Plaza, Defendant DETECTIVE MCDONNELL took Plaintiff's wallet out of Plaintiff's pocket and showed it to a JOHN DOE officer doing the pedigree

information, and the officer asked, in sum and substance, "why does this I.D. card say Shawn Schrader?"

90.    Defendant DETECTIVE MCDONNELL told the JOHN DOE officer, in sum and substance, "just write Shawn Carrié."

91.    Plaintiff had told the officers that his name was Shawn Schrader, and he gave them his date of birth.

92.    Plaintiff had three forms of identification with him (a New York University identification, a food stamps benefit card, and a U.S. Passport), all of which stated that his name was Shawn Schrader, and all of which gave his birth date.

93.    The Defendant police officers never asked Plaintiff if he was Shawn Carrié, and ignored both Plaintiff's statements, and his three forms of identification, that stated clearly that his name was Shawn Schrader.

94.    Plaintiff later found out, when he was taken in front of a judge, that he was arrested on an open warrant for some other person named Shawn Carrié.

95.    Plaintiff's arrest was a sham to take him into custody, and the Defendant officers knew, or should have known upon rudimentary inquiry, that he was not the person for whom there was the open warrant.

96.    Plaintiff was taken by Defendant DETECTIVE MCDONNELL to a secluded area at One Police Plaza, and questioned.

97.    Defendant DETECTIVE MCDONNELL asked Plaintiff questions / made comments such as, in sum and substance, the following: "Do you know why we brought you in here today?" "Can you tell me what you were doing today?" "Who were you with?" "What were

12

you doing?" "You know, we have a reason to bring you in here.  We have a warrant for you."

98.    Plaintiff at that time had no outstanding warrants of any kind.

99.    Plaintiff remained silent in response to all of Defendant DETECTIVE MCDONNELL's questions and comments.

100.    Plaintiff did, however, request a lawyer.

101.    Defendant DETECTIVE MCDONNELL's response was to say, "yeah, sure."

102.    Plaintiff was not provided with means to contact a lawyer.

103.    Defendant DETECTIVE MCDONNELL brought Plaintiff to a cell at One Police Plaza, where he was held for approximately six hours.

104.    Plaintiff was then taken to Manhattan Central Booking, where he was placed in a cell by himself.

105.    Approximately seven hours later Plaintiff was taken out of the cell by Defendant DETECTIVE MCDONNELL, and taken to a courtroom.

106.    In the courtroom the judge began to read off charges concerning some incident involving public urination in 2007 (that had nothing whatsoever to do with Plaintiff), and referring to Plaintiff as Shawn Carrié (which is not Plaintiff's legal name).

107.    Plaintiff was not given access to a lawyer before being brought to the courtroom, despite repeated requests.

108.    Plaintiff told the judge that his name is not Shawn Carrié, it is Shawn Schrader, and Plaintiff asked to speak with a lawyer.

109.    The judge stated that she was confused, asked to see Plaintiff's identification, and put the matter on for a second call.

110.    Plaintiff was finally given the opportunity to contact a lawyer, and the judge released Plaintiff from custody and allowed Plaintiff to be at liberty while awaiting the second call.

111.    A lawyer came to represent Plaintiff, and explained to the judge that Plaintiff was not the person who the charge(s) in the warrant were directed at, and that Plaintiff was not Shawn Carrié, but rather was Shawn Shrader.

112.    The court file that Plaintiff's attorney had been provided showed that the Shawn Carrié for whom a warrant had been issued had an address Plaintiff never had lived at, and a date of birth that was not Plaintiff's date of birth.

113.    The judge put the matter over to June 14, 2002.

114.    Plaintiff spent approximately 13 or 14 hours in police custody between his arrest around 9:15 p.m. on May 1, 2012, and his release at around noon on May 2, 2012.

115.    On June 14, 2002 the "charges" stemming from the 2007 warrant for someone else named Shawn Carrié - which never had anything to do with Plaintiff - were dismissed in their entirety.

116.    Plaintiff has never been able, despite numerous efforts, to receive any of his property back, because the property voucher was filled out using the name Shawn Carrié, and Plaintiff's name (as is reflected on all of his identification) is Shawn Schrader.

117.    Numerous items of Plaintiff's property were stolen by Defendant DETECTIVE MCDONNELL, Defendant SERGEANT PULIZZOTTO, and the other JOHN DOES arresting officers, and not vouchered at all.

118.    Defendant DETECTIVE MCDONNELL is a detective with the NYPD's Intelligence Division.

14

119.    Defendant SERGEANT PULIZZOTTO is a sergeant with the NYPD's Intelligence Division.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

120.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

121.    By their conduct and actions in seizing plaintiff, searching plaintiff, depriving Plaintiff of his property, falsely arresting and imprisoning plaintiff, assaulting and battering plaintiff, trespassing upon plaintiff, maliciously prosecuting plaintiff, abusing process against plaintiff, denying proper medical care to plaintiff, violating rights to due process of plaintiff, violating and retaliating for plaintiff's exercise of his rights to free speech and assembly, failing to intercede on behalf of the plaintiff and in failing to protect the plaintiff from the unjustified and unconstitutional treatment he received at the hands of other defendants, defendants JONES, PEREZ, CALDERON, PEREZ, MCDONNELL, PULIZZOTTO, DOES and/or ROES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, and Fourteenth amendments.

122.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

15

damaged and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

123.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

124.   By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants MCDONNELL, PULIZZOTTO and RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, and Fourteenth amendments.

125.   As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF DEFENDANT THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

126.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

127.   At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

16

128.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

129.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech and association in a manner that affronts police officers or is interpreted by police officers as challenging their authority or documenting or reporting their misconduct.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

130.    At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

131.    At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies,

practices, customs and/or usages of engaging in unconstitutional false arrests and related

malicious prosecutions, and in unconstitutional, violent, and overly aggressive actions toward

individuals perceived as being affiliated with the Occupy Wall Street movement.  Such policies,

practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct

alleged herein.

132.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

damaged and injured.

## FOURTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

133.    The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

134.    The conduct of the individual defendants alleged herein, occurred while they were

on duty and in uniform, and/or in and during the course and scope of their duties and functions as

New York City police officers, and/or while they were acting as agents and employees of the

defendant THE CITY OF NEW YORK, and, as a result, the defendant THE CITY OF NEW

YORK is liable to the plaintiff pursuant to the state common law doctrine of respondeat superior.

135.    As a result of the foregoing, plaintiff was deprived of his liberty and property,

experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

damaged and injured.

## FIFTH CLAIM

## ASSAULT AND BATTERY

136.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

137.   By the actions described above, defendants did inflict assault and battery upon the plaintiff. The acts and conduct of defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

138.   As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

## FALSE ARREST AND FALSE IMPRISONMENT

139.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

140.   By the actions described above, defendants caused plaintiff to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

141.   As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

19

## SEVENTH CLAIM

### VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

142.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

143.    By the actions described above, defendants violated, and retaliated for the exercise of, the free speech and assembly rights of plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

144.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### TRESPASS

145.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

146.    The defendants willfully, wrongfully and unlawfully trespassed upon the person of plaintiff.

147.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

**INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

148.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

149.     By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused severe emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

150.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

### NEGLIGENCE

151.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

152.     The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

153.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise

damaged and injured.

## ELEVENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

154.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

155.    Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

156.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

## CONVERSION

157.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

158.    Through their actions in causing a serious interference with, and/or in seriously interfering with, plaintiff's right of possession in his property, and/or in exercising unauthorized possession and/or ownership over plaintiff's property, defendants wrongfully converted plaintiff's property.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

22

159.   As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

## MALICIOUS PROSECUTION

160.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

161.   By the actions described above, defendants maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

162.   As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM

## ABUSE OF PROCESS

163.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

164.   By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding

23

detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

165.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FIFTEENTH CLAIM

## CONSTITUTIONAL TORT

166.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

167.    Defendants, acting under color of law, violated plaintiff's rights pursuant to Article I, §§ 6, 8, 9, and 12 of the New York State Constitution.

168.    A damages remedy here is necessary to effectuate the purposes of §§ 6, 8, 9, and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

169.    As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

    a. Compensatory damages;

    b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated:    New York, New York
          March 26, 2013

                          JEFFREY A. ROTHMAN, Esq.
                          315 Broadway, Suite 200
                          New York, New York 10007
                          (212) 227-2980

                          Attorney for Plaintiff